IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 05-338 |
| SHERRELL BROOKS | ) ) ) | |

**MEMORANDUM OPINION**

CONTI, District Judge.

      Pending before the court is a request to medicate involuntarily defendant Sherrell Brooks ("defendant" or "Brooks") in order to restore his mental competency to stand trial. Specifically, the Federal Bureau of Prisons ("BOP"), by letter dated February 22, 2010, requested the court to enter an order to authorize the involuntary treatment of defendant with antipsychotic medication. The court makes the following findings of fact and conclusions of law with respect to the BOP's request:

**I.**     **Findings of Fact**

A.     Background

1.     On November 3, 2005, defendant was indicted for the crime of bank robbery, in violation of 18 U.S.C. § 2113(a). (Docket Nos. 1, 2, 3.)

2.     The alleged conduct occurred on or about December 21, 2000. (Id.)

3.     The maximum term of imprisonment for this offense is twenty years. U.S.C. § 2113(a).

4. On November 4, 2005, the government moved the court for a writ of habeas corpus ad prosequendum, claiming defendant was in federal custody at MCFP Springfield, ("FMC"), after being sentenced by the United States District Court for the Western District of Kentucky. (See Docket No. 6.) On November 7, 2007, the government's motion was granted and a writ was issued. (Docket No. 7.) On November 21, 2005, the November 4, 2005 writ was returned unexecuted because defendant was "out on a court ordered psych study for the Western District of Kentucky." (Docket No. 8.)

5. On January 12, 2007, defendant was sentenced to imprisonment for 168 months for a bank robbery offense in the Western District of Kentucky. See United States v. Brooks, No. 4:04-cr-0027-JHM-ERG-1 (Docket No. 73.) Thus, defendant had not been sentenced by the district court at the time the government moved in this case for a writ of habeas corpus ad prosequendum on November 4, 2005.

6. On January 30, 2007, the government moved for a second writ of habeas corpus ad prosequendum claiming defendant was in deferral custody at the Grayson County Detention Center, Leitchfield, Kentucky. (See Docket No. 9.) On February 1, 2007, the government's motion was granted and a writ was issued. (Docket No. 10.) On March 2, 2007, the writ was returned unexecuted because defendant was not at the Grayson County Detention Center, Leitchfield, Kentucky. (See Docket No. 11.)

7. On February 29, 2008, the government moved for a third writ of habeas prosequendum. (Docket No. 12.) The motion was granted and the writ was issued. (Docket No. 13.)

8. On March 21, 2008, the government moved for a fourth writ of habeas prosequendum. (Docket No. 14.) The motion was granted and a writ was issued. (Docket No. 15.)

9. Defendant's initial appearance in this case was held on April 18, 2008. (Docket No. 16.)

10. Based upon a presentence investigation report conducted by the United States Probation Office in the Western District of Kentucky in November 2006, the government expressed concerns about defendant's competency for trial. The Assistant United States Attorney ("AUSA") advised the court of his intention to file a motion for a psychiatric evaluation pursuant to 18 U.S.C. § 4241. (See docket minute entry dated May 12, 2008.)

11. On July 28, 2008, the court issued an order granting a motion to authorize unsupervised contact visits with defendant by a court-appointed forensic psychiatrist, Robert Wettstein, M.D. ("Dr. Wettstein") in correctional institutions where defendant was housed. (Docket No. 36.)

12. On February 12, 2009, the court held a status conference with respect to the mental competency exam Dr. Wettstein was to conduct. Due to defendant's unwillingness to cooperate with Dr. Wettstein, the court concluded that defendant needed to be committed to a medical referral facility for an evaluation and on February 12, 2009 issued an order to commit defendant to the BOP for a mental competency exam. (Docket No. 40.)

13. On July 20, 2009, the court reissued the order to commit defendant to the BOP for a mental competency exam. (See minute entry dated July 20, 2009.)

14. On October 22, 2009, the court held a hearing with respect to defendant's competency. The court found defendant incompetent to stand trial because he suffered from a mental disease or defect that rendered him unable to understand the nature and consequences of the proceedings against him or to assist properly in his own defense. (Docket No. 43.)

15. The court based its findings, among other things, on: a) the professional opinion of Christine Scronce, Ph.D, a forensic psychologist, who, after evaluating defendant at the FMC in Devens, Massachusetts, found him incompetent to stand trial and authored a detailed report, and b) the observations of defendant over the course of several hearings.

16. The court ordered defendant to be committed to the custody of the Attorney General for hospitalization and treatment for a reasonable period of time, not to exceed four months, to determine whether there is a substantial probability that in the foreseeable future, defendant would be able to attain the capacity to permit the trial to proceed. (Docket No. 45.)

17. The psychiatrist at the facility was directed to file a report with the clerk of this court.

18. Defendant was treated at the FMC in Butner, North Carolina by staff psychologist Maureen Reardon, Ph. D. ("Dr. Reardon"), and staff psychiatrist Ralph Newman, M.D. ("Dr. Newman").

19. On February 22, 2010, Sara M. Revell, Complex Warden at the FMC in Butner, North Carolina filed a comprehensive report of defendant's psychiatric evaluation with the court. The report was submitted by Dr. Newman and a psychology intern, Ronald Dahl, M.S. ("Dahl"), supervised by Dr. Reardon.

20. The Butner Report contains the opinion that defendant remained incompetent to stand trial and that there was a substantial likelihood that defendant's competency may be restored with appropriate treatment of psychotropic medications.

21. In the BOP's request for judicial oversight of defendant's involuntary medication, the BOP cites Sell v. United States, 539 U.S. 166 (2003), for the proposition that court must

make certain findings before the BOP is authorized to administer involuntarily antipsychotic medication in order to render a mentally ill defendant competent to stand trial.

22. On April 27, 2010, the court held a hearing to determine whether to grant the BOP's request to order involuntary medication of defendant to restore his competency to stand trial.

23. Defendant, defense counsel, Dr. Reardon and Dr. Newman appeared by video.

24. The government offered the testimony of Dr Reardon and Dr. Newman in support of the forcible medication of psychotropic drugs and called Dr. Reardon and Dr. Newman as witnesses. (April 27, 2010 Hearing Transcript ("Tr. 1") at 11-61.)

25. Defense counsel filed a motion to continue the hearing in order to offer defendant's expert witness and to prepare a proper defense to defendant's right not to be involuntarily treated with psychotropic medications. The court granted the motion. (Id. at 8.)

26. On July 23, 2010, the competency hearing continued. (Docket No. 54.)

27. At the conclusion of the July 23, 2010 hearing, the court ordered the parties to submit proposed statements of facts and conclusions of law. (July 23, 2010 Hearing Transcript ("Tr. 2") at 74.) Defendant's proposed statements of facts and conclusions of law raised issues not previously brought to the court's attention, including the BOP's failure to exhaust the administrative procedures set forth in 28 C.F.R. § 549.43.

28. On September 22, 2010, the court held a status conference and directed the parties to submit supplemental briefing.

29. Defendant submitted supplemental briefing to support its position that the requirements set forth in the administrative regulation, 28 C.F.R. § 549.43, are mandatory. In support, defendant cites United State v. White, 431 F.3d 431, 435 (5th Cir. 2005); United States v. Richardson, No. 3:08-cr-302-J-32TEM, 2009 WL 4730563 (M.D. Fla. Dec. 7, 2009); United States v. Gonzalez-Aguilar, 446 F. Supp. 2d 1099, 1107 (D. Ariz. 2006); United States v. Miliken, No. 305-CR6J-32TEM, 2006 WL 2945950 (M.D. Fla. Oct. 13, 2006) (Docket No. 75.)

30. The government submitted supplemental briefing indicating that it was the position of the legal department at FMC Butner that 28 C.F.R. § 549.43 was overruled in cases involving efforts to involuntarily medicate defendants to restore their competence by United States v. Sell, 536 U.S. 166 (2003), but that the regulation continues to be valid for proceedings mandated by Washington v. Harper, 494 U.S. 210 (1990). In support, the government cites DONNA LEE ELM AND DOUG PASSON, *Forced Medication after United States v. Sell*, 32 JUN CHAMPION 26 (2008). (Docket Nos. 76, 77.)

B.  Factual Background

31. Defendant is currently housed in FMC Butner. (Defendant's Proposed Statement of Facts and Conclusions of Law ("S.F.") 5.)

32. Defendant is not a danger to himself or others and does not need to be involuntarily medicated to ensure the safety of himself or others. (Def.'s S.F. 7; Butner Report.)

33. Defendant refused to take voluntarily medications in order to restore his competency. (Butner Report.)

34. Defendant's refusal to take voluntarily the medications designed to restore his mental competency to stand trial does not put his own health gravely at risk. (Def.'s S.F. 7.)

35. Dr. Reardon testified that many attempts were made to obtain defendant's consent. (Tr. 1 at 46.)

36. Dr. Reardon testified that, in her opinion, defendant was unable to give informed consent. (Tr. 2 at 32.)

37. Defendant was informed about his medication by Dr. Reardon, who is not a medical doctor. (Tr. 1 at 14, 46.)

38. Prior to the April 27, 2010 hearing, Dr. Newman sat down once or twice with defendant. (Tr. 1 at 29.) Defendant had not directly declined oral medication to Dr. Newman. (Id. at 30.)

39. Dr. Newman testified that if the court were to order that defendant be involuntarily medicated, the treatment team at Butner would sit down with defendant and discuss his options for medication. (Id. at 27-28.)

40. Dr. Newman testified that there are detainees who will take medications under protest pursuant to a court order, but will not sign the consent form. (Id. at 30, 32.)

41. No administrative review was conducted within the Bureau of Prisons to determine whether Brooks should be involuntarily medicated. (Tr. 2 at 56.)

42. Dr. Reardon stated that "[f]ormal assessment of his informed consent to treatment has not been made. When he refused to take medication, we did not have cause to forcibly medicate him under, for example, Harper criteria, or on an emergent basis, then we petition the Court to authorize treatment." (Id. at 32.)

## II. Conclusions of Law

### A. Interests of the Parties

1. Defendant has a constitutional liberty interest in avoiding forcible medication. Washington v. Harper, 494 U.S. 210, 221 (1999); Riggins v. Nevada, 504 U.S. 127, 134-35, 137 (1992).

2. The government has an interest in bringing defendant to trial. Riggins, 504 U.S. at 135-36 ("'[P]ower to bring an accused to trial is fundamental to a scheme of 'ordered liberty' and prerequisite to social justice and peace'") (quoting Illinois v. Allen, 397 U.S. 337, 347 (1970)).

### B. Involuntary Medication

3. Procedural due process does not require a judicial hearing before a prisoner can be involuntarily medicated with antipsychotic drugs, if a committee, after an administrative hearing, determines that "the inmate suffers from a mental disorder and is gravely disabled or dangerous [to himself, others or their property]." Washington v. Harper, 494 U.S. 210, 215 (1990).

4. The factors to be considered in determining if a defendant should be forcibly medicated to restore his competency to stand trial are set forth in Sell v. United States, 539 U.S. 166, 180-81 (2003). Those factors include consideration whether: 1) an important governmental interest is at stake; 2) involuntary medication will significantly further state interests; 3) involuntary medication is necessary to further those interests; and 4) the administration of the drugs is medically appropriate. Id.

5. In Sell, the issue of dangerousness was also considered and the defendant had an administrative hearing. Sell, 539 U.S. at 171-72.

6. The Court of Appeals for the Third Circuit in United States v. Grape, 549 F.3d 591, 598-99 (3d Cir. 2008), followed the four-factor test set forth in Sell, which the government must meet in order to overcome a detainee's liberty interest when forcibly medicating an inmate solely for the purpose of trial competence.

7. Grape is not dispositive because the issue presented here - administrative exhaustion - was not raised in that case.

C. Administrative Procedures

8. "Before a person who has been committed to the custody of the Attorney General can be involuntarily medicated, there are administrative procedures that must be followed." 1A CHARLES ALAN WRIGHT, AND ANDREW D. LEIPOLD, FEDERAL PRACTICE AND PROCEDURE, § 208 at 533 (4 ed. 2008) (relating to FED. R. CR. P. 12.2).

9. "An inmate is entitled to an administrative hearing that is conducted by a psychiatrist who is not currently involved in the inmate's treatment, has the right to be present and to give evidence, has the right to have his treating psychiatrist present, and has the right to a written decision." Id. (citing 28 C.F.R. § 549.43)

10. The regulation applicable to the involuntary administration of psychiatric treatment and medication, 28 C.F.R. § 549.431 provides, in relevant part,

---

1  The government brought to the court's attention that there are proposed changes to 28 C.F.R. § 549.43, which have not yet been promulgated. (Docket No. 77.) The proposed regulations are not effective. Under those circumstances, this court will not consider the proposed changes to be authoritative. It is noteworthy that there will be judicial oversight in this case after the administrative procedures are followed. This court is not abdicating its responsibilities.

9

Title 18 U.S.C. 4241-4247 and federal court decisions require that certain procedures be followed prior to the involuntary administration of psychiatric treatment and medication to persons in the custody of the Attorney General. Court commitment for hospitalization provides the judicial due process hearing, and no further judicial due process hearing is needed for the admission decision. However, in order to administer treatment or psychotropic medication on an involuntary basis, further administrative due process procedures, as specified in this section must be provided to the inmate. Except as provided for in paragraph (b) of this section, the procedures outlined herein must be followed after a person is committed for hospitalization and prior to administering involuntary treatment, including medication.

(a) Procedures. When an inmate will not or cannot provide voluntary written informed consent for psychotropic medication, the inmate will be scheduled for an administrative hearing. Absent an emergency situation, the inmate will not be medicated prior to the hearing. In regard to the hearing, the inmate will be given the following procedural safeguards:

(1) Staff shall provide 24-hour advance written notice of the date, time, place, and purpose of the hearing, including the reasons for the medication proposal.

(2) Staff shall inform the inmate of the right to appear at the hearing, to present evidence, to have a staff representative, to request witnesses, and to request that witnesses be questioned by the staff representative or by the person conducting the hearinbg. If the inmate does not request a staff representative, or requests a staff representative with insufficient experience or education, the institution mental health division administrator shall appoint a staff representative. . . .

(3) The hearing is to be conducted by a psychiatrist who is not currently involved in the diagnosis or treatment of the inmate.

(4) The treating/evaluating psychiatrist/clinician must be present at the hearing and must present clinical data and background information relative to the need for medication. Members of the treating /evaluating team may also attend the hearing.

> (5) **The psychiatrist conducting the hearing shall determine whether treatment or psychotropic medication is necessary in order to attempt to make the inmate competent for trial** or is necessary because the inmate is dangerous to self or other, is gravely disabled, or is unable to function in the open population of a mental health referral center or a regular prison. The psychiatrist shall prepare a written report regarding the decision.
>
> (6) The inmate shall be given a copy of the report and shall be advised that he or she may submit an appeal to the institution mental health division administrator regarding the decision within 24 hours of the decisions and that the administrator shall review the decision within 24 hours of the inmate's appeal. The administrator shall ensure that the inmate received all necessary procedural protections and that the justification for involuntary treatment or medication is appropriate. Upon request of the inmate, the staff representative shall assist the inmate in preparing and submitting the appeal.
>
> (7) If the inmate appeals, absent a psychiatric emergency, medication will not be administered before the administrator's decision. The inmate's appeal, which may be handwritten, must be filed within 24 hours of the inmate's receipt of the decision.
>
> (8) A psychiatrist, other than the attending psychiatrist, shall provide follow-up monitoring of the patient's treatment or medication at least once every 30 days after the hearing. The follow-up shall be documented in the medical record.

28 C.F.R. § 549.43(a)(1)-(8) (emphasis added).

11. The Court of Appeals for the Third Circuit has not considered whether administrative procedures under 28 C.F.R. § 549.43 must be followed before a court can determine whether a pretrial detainee committed to the custody of the Attorney General should be involuntarily medicated to restore his or her mental competency to stand trial. No district court within the Third Circuit has directly addressed that issue.

12. The Court of Appeals for the Fifth Circuit in United States v. White, 431 F.3d 431, 435 (5th Cir. 2005), commented that the administrative procedures set forth in 28 C.F.R. § 549.43 must be followed prior to conducting a hearing in federal court with respect to whether a detainee may be involuntarily medicated in order to restore the detainee's competency to stand trial. In White, the BOP did not follow the administrative procedures and sought a judicial order for the involuntary medication of the defendant who was claimed to be both dangerous and incompetent to stand trial, which the district court granted. On appeal, the government argued that, distinct from the issue of involuntary medication with respect to dangerousness, the Supreme Court in Sell overturned the regulatory scheme set forth in 28 C.F.R. § 549.43 with respect to whether a detainee may be involuntarily medicated to render him or her competent for trial. While noting that issue would not be dispositive given the presence of an issue about dangerousness, the court of appeals disagreed.

> The government's position is grounded in the Supreme Court's observation in *Sell* that deciding to administer forced medication to restore competence involves "quintessentially legal questions of trial fairness and competence." 539 U.S. at 182. The government therefore contends that, in making this statement, the Supreme Court overturned the regulatory scheme laid out in § 549.43 as to the issue of involuntary medication to render a defendant competent for trial. We disagree. The *Sell* Court was addressing an inmate's *substantive* right to be free from unwanted medication-not the *procedural* protections of that right. We seriously doubt that the Court would thus eviscerate an entire regulatory scheme designed to protect an inmate's due process rights by implication.
>
> Ultimately, however, we need not address the government's contention here, given the Supreme Court's admonition in *Sell* to consider whether involuntary medication is appropriate on grounds of dangerousness *before* considering whether doing so would be

12

appropriate to restore an inmate's competence to stand trial. *Id.* at 183. . . .

White, 431 F.2d at 435.

13. District courts, which considered the issue raised here, have determined that Sell did not eliminate the obligation of the BOP to exhaust the administrative remedies under 28 C.F.R. § 549.43.  See United States v. Richardson, No. 3:08-cr-302-J-32TEM, 2009 WL 4730563, at *2 (M.D. Fla. Dec. 7, 2009) ("'Nothing in *Sell* pronounces or intimates that the § 549.43 hearing is no longer required.  Indeed, it is not uncommon that available administrative review of an issue be exhausted before a court will take up the matter.'") (quoting United States v. Milliken, No. 305-CR6J-32TEM, 2006 WL 2945950, at * 3 (M.D. Fla. Oct. 13, 2006)); United States v. Fabela, 666 F. Supp. 2d 1082 (D. Ariz. 2009) (a Harper hearing is a requisite for the issuance of a valid Sell order);   United States v. Gonzalez-Aguilar, 446 F. Supp. 2d 1099, 1107 (D. Ariz. 2006) ("the BOP's failure to pursue the administrative hearing process . . . is very detrimental to all participants in the criminal justice process . . ..").  No contrary decisions were found by this court.2

14. The government's and the BOP's position essentially suggests that an administrative hearing pursuant to 28 C.F.R. § 549.43 is unnecessary because Sell implicitly requires that a court analyze the detainee's medical condition and make the final decision with respect to whether a detainee's liberty interest to remain free of unwanted medical

---

2    The article relied upon by the government indicates that "[w]hile some federal courts have found that 28 C.F.R. § 549.43 must be exhausted first, others have not required exhaustion of § 549.43 remedies."  DONNA LEE ELM AND DOUG PASSON, *Forced Medication after United States v. Sell*, 32 JUN CHAMPION 26 at 6 n.41 (citing United States v. Valenzuela-Peuntes, 479 F.3d 1220 (10th Cir. 2007); United States v. Bradley, 417 F.3d 1107, 1114 n.13 (10th Cir. 2005); United States v. McKnight, No. 3:05CR308-C2007 WL 2021848 (W.D. N.C. July 12, 2007)). Those cases, however, are not on point because the specific issue of exhaustion of the BOP's administrative procedures under 28 C.F.R. § 549.43 was not directly raised or addressed by the courts.

treatment outweighs the government's interest in ordering a detainee be involuntarily medicated.

15. The circumstances in this case are similar to those in Richardson. In that case, the BOP requested the district court to authorize involuntary medical treatment if the defendant did not agree to take antipsychotic medication on a voluntary basis. The district court held a hearing with respect to the matter, and the government maintained that an administrative hearing pursuant to 28 C.F.R. § 549.43 was unnecessary because Sell

> implicitly requires that a court of law analyze the detainee's medical condition and make the final decision as to whether the government's interest in ordering involuntarily medication outweighs the detainee's constitutional liberty interest in remaining free from unwanted medical treat- ment [sic].

Richardson, 2009 WL 4730563, at *2. The court denied the request, acknowledging that the Eleventh Circuit Court of Appeals had not addressed the issue, and relied on its previous decision in Milliken, 2006 WL 2945950, at * 3.

16. In Milliken, the district court reviewed the defendant's objection to a magistrate judge's report and recommendation that defendant be involuntarily administered antipsychotic medication to restore his competency for trial. Milliken, 2006 WL 2945950, at * 1. The district court acknowledged that the issue whether the administrative hearing set forth in 28 C.F.R. § 549.43 was no longer required in light of the Sell presented a novel question of law in the Eleventh Circuit at that time. Id. The district court relied on the plain language of the BOP regulation, the decision in White, and a district court's decision in Gonzalez-Aguilar, 446 F. Supp. 2d at 1107, to determine that "nothing in *Sell* pronounces or intimates that the § 549.43 hearing is no longer required." Id. at *3. The district

14

court pointed out that the "BOP regulations effective July 1, 2006 (three years post-*Sell*) codify that same regulation, which unequivocally requires the administrative process." Id.

17. *Sell* did not address the issue presented here and like the Court of Appeals for the Fifth Circuit in White, this court cannot envision that the Supreme Court "would . . . eviscerate an entire regulatory scheme designed to protect an inmate's due process rights by implication." White, 431 F.3d at 435.

18. The plain language of the applicable federal regulation, 28 C.F.R. § 549.43, requires the administrative procedures be complied with prior to the court's consideration whether a detainee should be involuntarily medicated in order to restore his or her mental competency to stand trial. The BOP is required to exhaust its administrative procedures prior to the government seeking judicial oversight of involuntary medication of Brooks to restore his competency in order to stand trial. Being able to review the report of an independent psychiatrist, which is required by 28 C.F.R. § 549.43, will be helpful to this court.

19. Because the BOP did not pursue the mandatory administrative procedures required by 28 C.F.R. § 549.43, the court orders that defendant be remanded into the custody of the Attorney General for the purpose of following the required administrative procedures for involuntary psychiatric treatment.

20. For the above reasons, absent conducting a BOP administrative proceeding pursuant to 28 C.F.R. § 549.43, the BOP's request for judicial oversight to treat involuntarily defendant Brooks with psychotropic medications to restore his competency to proceed to trial is

DENIED without prejudice.

An appropriate Order will be issued.

Dated: September 30, 2010					By the court:

								/s/ JOY FLOWERS CONTI
								Joy Flowers Conti
								United States District Judge

cc:	Sherrell Brooks
	United States Marshal
	Unites States Pretrial Services
	Unites States Probation